127 So.2d 642

**UNIVERSAL C. I. T. CREDIT CORPORATION**

v.

**Oraton JOHNSON.**

3 Div. 47.

Court of Appeals of Alabama.

Oct. 4, 1960.

Rehearing Denied Nov. 29, 1960.

Robt. E. Coburn, Jr., Montgomery, for appellant.

Ramon L. Farnell, Montgomery, for appellee.

CATES, Judge.

Universal has appealed from a judgment of the Montgomery Circuit Court whereunder $400 was awarded against it on Johnson's plea of set-off. The cause was tried without a jury. Neither party demurred to any of the other's pleadings.

Universal brought an action under a two count complaint for default in payments under a written contract under which Johnson bought a 1957 Ford car. Johnson counterclaimed on the theory that the precipitating unpaid installment of $91.09 was tendered by him to Universal and refused.

For damages he averred that Universal had wiped out the trade-in and the payments he had made before default. The net amount sought by Universal was $480.12. Johnson claimed $2,307.44 less the $480.12 or a maximum of $1,827.32.

Count two of the complaint alleges a contract of May 27, 1957, to Al Means, Inc., for Johnson to pay thirty months' installments of $91.09 each, beginning July 11, 1957. Al Means, Inc., transferred the instrument to Universal at inception.

The count avers "that said contract was declared due and unpaid on the 22nd day of May, 1959." It also sets up the acceleration clause whereunder, on default, the "full balance shall without notice become due forthwith."

This clause was invoked May 22, 1959, some three days after the complaint was filed. An anticipated cause of action will not support a judgment at law. Hence, the evidence must, on review in this court,

be considered solely within the frame of reference encompassed by count one.

Count one reads:

"The plaintiff claims of the defendant the sum of $2732.70 Dollars due by written contract made by defendant on the 27th day of May, 1957, and now past due. Plaintiff avers that so far as this debt is concerned, the defendant waived all right to have exempted to him any property which is now or hereafter may be exempted to him under the Constitution and Laws of the State of Alabama. Further, Plaintiff claims of the defendant the sum of $125.00 Dollars as a reasonable attorney's fee, which defendant agreed to pay by virtue of a clause contained in said contract."

■ Universal in its reply brief has accepted Johnson's statement of facts, and hence we are controlled by this statement for the purposes of this appeal. New York Life Ins. Co. v. Mason, 236 Ala. 44, 180 So. 775; Bankson v. Accident & Casualty Co., 244 Ala. 371, 13 So.2d 398.

On October 27, 1958, Johnson's son, Theodore, was arrested while driving the automobile, in which there were 15 gallons of "moonshine whiskey." Johnson immediately reported this to Universal. The manager of the company suggested that Johnson go to the sheriff's office and see what he could find out, which he did. He was sent then to the A. B. C. Board to talk with a "State man," who told Johnson that "they (meaning the company) can get it (the car) and they can give it to you." Johnson was assured by the manager that they would get his automobile back for him and that there would be a slight extra charge for this.

On November 11 or 12, 1958, Johnson's wife, Gertrude, went to the office of Universal in order to make the November payment. This payment was refused by the manager. Gertrude Johnson had the payment of $91.09 with her and had come prepared to make the November payment, even though the automobile was not in Johnson's possession. November 19, 1958, the manager telephoned Johnson's home and spoke to Gertrude. He asked Gertrude to tell her husband that he had his automobile and that Johnson could come down and get it. Johnson called the manager that same afternoon and was told by the manager that he had his car and that it would cost him about $100 extra to reimburse the company for securing the automobile.

Early the following morning, Johnson went to the office of the company, taking with him $191.09 for the purpose of making the November payment and paying the extra $100. When he got to the office, the manager was out and Johnson talked with Mr. Kenneth R. Maddox. Johnson made known to him the purpose of his visit, and Mr. Maddox went to a desk and secured the figure necessary to pay off the automobile in full, $1,300. Johnson reminded Mr. Maddox that he had talked with the manager the day before and had been told that he could get his automobile by making his monthly payment and paying an additional $100. Johnson was then requested to wait until the manager returned. Mr. Harmon, the manager, did come in, and Johnson reminded him of the conversation of the day before. Mr. Harmon stated that he could not turn the automobile over to Johnson unless he paid him $1,300. Johnson stated that this was impossible, and that he could not get up any such amount as that, to which Mr. Harmon replied, "I figured that."

Johnson testified, without contradiction, that Mr. Harmon said that if Johnson paid him $1,300, he could get the automobile. Johnson had made sixteen payments of $91.09, totaling $1,457.44. In addition, he had been allowed $850 for a "pretty good" automobile, making a grand total of $2,307.-44 that Johnson had invested in the 1957 Ford. He had not missed a single payment; had not violated the contract in any way; and was assured that he could get his car back. It would cost him some

extra, which he was willing to pay. He did tender $191.09 to the company, which represented the November payment plus the extra $100, on November 20, 1958, and Universal refused it.

[4, 5] We consider that Johnson's plea of set-off or counter claim cannot be reviewed here (as to whether it comes under Code 1940, T. 7, § 350, or is prohibited by § 356) because Universal did not demur to the plea. Demurrer to a plea of set-off tests its legal efficacy. Barber v. Martin, 240 Ala. 656, 200 So. 787. The failure to demur to the plea obviates our review except only to scrutinize it to see if it sets up the substance of a cause of action known to the law.

The plea reads:

"3. For further answer and by way of offset and counterclaim, the defendant states that at the time this action was commenced the plaintiff was indebted to the defendant in the sum of Two Thousand Three Hundred Seven and 44/100 Dollars ($2307.44), and the defendant states the following cause of action against the plaintiff:

"On, to-wit: May 27, 1957, the defendant entered into a contract with Al Means, Inc., whereby defendant agreed to purchase a Ford automobile under a conditional sales contract; that he was allowed $850.00 for his 1953 Ford Automobile, and the balance due was to be paid in 30 equal monthly installments of $91.09, the first installment being due on the 11th day of July, 1957; that on the same day, to-wit: May 27, 1957, the said Al Means, Inc., transferred or assigned said contract to the plaintiff. Defendant further alleges that he did pay the monthly installment of $91.09 which was due on July 11, 1957, and that he paid every monthly installment as the same became due up to and including the one due October 11, 1958; that on or before November 11, 1958, the defendant or his agent went to the office of the plaintiff and tendered the monthly installment in the amount of $91.09 due November 11, 1958 to the plaintiff's manager, and said payment was refused. Defendant further alleges that the default in making the payment due November 11, 1958, was due to no fault of his, and that when plaintiff refused the payment tendered on or before November 11, 1958, it breached the above-mentioned written contract. Defendant further alleges that as a result of the plaintiff's breach of contract, as aforesaid, defendant's automobile was taken by the plaintiff, and the defendant was damaged as follows: He was deprived of his 1953 automobile, valued at Eight Hundred Fifty Dollars ($850.00), and the sum of One Thousand Four Hundred Fifty-Seven and 44/100 Dollars ($1457.44), representing sixteen payments made in the amount of $91.09, or a total of Two Thousand Three Hundred Seven and 44/100 Dollars ($2307.44), which sum the defendant offers to set off against the demands of the plaintiff, and the defendant claims judgment against the plaintiff for the excess."

In replication, Universal filed the following:

"That the allegations of the cross-complaint, off-set or counterclaim are true as far as the payments up and to the November payment of 1958 are concerned, but that plaintiff was forced to refuse the payment, if one was made and plaintiff says that one was not offered or made on or before November 11, 1958 by the defendant or his agent, but that same if refused was because of a clause in the contract, which states as follows:

" 'Customer agrees to pay promptly all taxes and assessments upon the car and for its use or operation and on this contract; to keep the car free from liens; that all equipment, tires, accessories and parts shall become part of

the car by accession; not to sell, encumber or abandon the car or use it for hire or illegally';

"That on the 12th of November, 1958, plaintiff was forced to file a petition with the Alabama Alcoholic Beverage Control Board to obtain the automobile, defendant's son having been apprehended with 58 gallons of illegal moonshine whisky in said automobile; That plaintiff was forced to pay court cost of $50.00 to the Alabama Alcoholic Beverage Control Board and had to assure the Alabama Alcoholic Beverage Control Board before obtaining said automobile that it would not be returned to the defendant, said actions having forced the defendant to lose control and ownership of said automobile; that without the petition and the payment to the Alabama Alcoholic Beverage Control Board that plaintiff would have lost the property, defendant having abandoned or having lost control, allowing a lien or allowed illegal use of said automobile. Hence, plaintiff claims $250.00 in addition thereto to the counts already filed in this action."

Our attention has been called to a motion adopted by the A. B. C. Board as shown by its minutes of February 18, 1959:

"A motion was thereafter made and unanimously approved that it would be the policy of the Board henceforth that in all cases in which automobiles were seized while transporting illegal alcoholic beverages, that as a condition of and prerequisite to the Board exercising its discretion to return said automobile to some innocent third party, that said third party must pay to the Board the amount determined by the Board to cover the Board's reasonable costs and expenses in connection with the seizure, transportation, advertising, and storage of said automobile, in no event to be less than $25.00 and that the innocent third party to whom the vehicle is released give the Board his assurance that he will not permit return of the vehicle to the violator or to any member of his or her family, either directly or indirectly."

We need not consider the nature and effect of this Board action because Johnson's car was seized beforehand, in October, 1958, and was sold by Universal on December 10, 1958, to Price Motor Company in Tallassee.

On examination, in chief, of Mr. Maddox, he was asked:

"I will ask you this. Under what conditions do the A B C Board turn a car over to you?

"Mr. Farnell: If the Court please, we object to that.

"The Court: Well, that would be part of the rules and regulations and I will give you an exception.

"The Witness: Well, we had to sign some kind of a form saying that we wouldn't release the car back to him."

■ We consider the objection valid since the witness patently could not testify abstractly as to the policy of the Board. If the matter were within judicial knowledge, the court needed no evidence. Indeed, to receive it from Universal's manager was to admit hearsay.

If the question related to the conditions under which Johnson's car was released to Universal, then the objection should have been sustained because the minutes of the Board would furnish the best evidence of its conditions.

The error was cured by judgment since the court did not consider the evidence as excusing the refusal to accept Johnson's tender of the $191.09 demanded.

■ The allegations of Universal's replication were not proved on the trial.

Affirmed.